UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rockland Industrial Holdings, LLC,
d/b/a Rockland Flooring,

        Plaintiff,

**MEMORANDUM OPINION
AND ORDER**
v.  Civil No. 14-4662 ADM/JSM

Container Navigation Corporation,
and Kyung Kang,

        Defendants.

_____

Seth J. S. Leventhal, Esq., LEVENTHAL pllc, Minneapolis, MN, on behalf of Plaintiff.

E. Casey Beckett, Esq., Maslon Edelman Borman & Brand, LLP, Minneapolis, MN, on behalf of Defendants.
_____

## I.  INTRODUCTION

On January 14, 2015, the undersigned United States District Judge heard oral argument on Container Navigation Corporation ("CNC") and Kyung Kang's (collectively, the "Defendants") Motion to Dismiss [Docket No. 3]. Plaintiff Rockland Industrial Holdings, LLC d/b/a Rockland Flooring ("Rockland") opposes the motion. For the reasons set forth below, Defendants' motion is denied.

## II.  BACKGROUND

Rockland is a limited liability company with its principal place of business in Red Wing, Minnesota.[1]  Notice of Removal [Docket No. 1] Attach. 3 ("Am. Compl.") ¶ 3.  Since 2002,

---

[1] The Amended Complaint identifies Rockland as a Minnesota LLC while Rockland's Memorandum opposing Defendants' Motion and Minnesota Secretary of State paperwork identifies Rockland as a Wisconsin LLC. Compare Notice of Removal [Docket No. 1] Attach. 3 ¶ 3 ("Plaintiff Rockland Industrial Holdings, LLC is a Minnesota limited liability company. . .

Rockland has been manufacturing flooring products for domestic containers transported by trains, large trucks, and cargo ships. Wolford Decl. [Docket No. 12] ¶ 5. Both Rockland's corporate headquarters and its original manufacturing facility is located in Red Wing, Minnesota. Id. ¶ 7. Rockland has additional manufacturing facilities located in Wisconsin, Indiana, and Ontario, Canada. Id.

Beginning in or around 2001, Rockland began conducting business with Shine Pyung, a Korean container manufacturing company owned and operated by Mr. Jae Man Hur. Kang Decl. [Docket No. 7] ¶¶ 3,4,6; Wolford Decl. ¶ 9. Shine Pyung's relationship with Rockland was governed by an agreement that included a Minnesota choice of law provision. Chorney Decl. [Docket No. 13] ¶ 7. Ms. Kyung Kang was Shine Pyung's corporate secretary at this time.

According to Kang, CNC was founded by Hur in 2001. Kang Decl. ¶ 3. At its inception, CNC was an international subsidiary of Shine Pyung, with Hur acting as president of both Shine Pyung and CNC. Sometime thereafter, CNC began conducting business directly with Rockland. Wolford Decl. ¶ 16. Kang became CNC's principal contact with Rockland. Kang Decl. ¶ 7. Throughout the parties' business relationship, Kang and CNC had regular telephonic and electronic communication with Rockland employees in Red Wing, Minnesota. Wolford Decl. ¶¶ 19-20. Sometime in 2006 or 2007, Kang traveled to Red Wing, Minnesota to meet with Rockland executives. Kang Decl. ¶ 9; Wolford Decl. ¶ 17 Chorney Decl. ¶ 6. Rockland recalls discussing business with Kang, including future container demand and other market projections. Wolford Decl. ¶ 17; Chorney Decl. ¶ 6. Rockland also recalls providing Kang with a tour of

---

."), with Pl.'s Mem. Opp'n. [Docket No. 11] 2 ("Rockland is a Wisconsin limited liability company[.] . . ."); Beckett Decl. [Docket No. 6] ex. 2 (documentation from the Minnesota Secretary of State).

Rockland's Red Wing, Minnesota facility, which had produced flooring for Shine Pyung in the past. Id. Kang remembers very little about her trip to Minnesota. Kang. Decl. ¶ 9.

Hur died in 2011. Id. ¶ 10. After his death, CNC became an independent company and Kang became president. Id. CNC and Rockland's business relationship continued after Hur's passing. Id. ¶ 11. CNC requested assurances from Rockland that the parties would execute an agreement similar in nature to Shine Pyung's agreement with Rockland. Id. Although Rockland agreed to make such an agreement, no contract between Rockland and CNC was ever executed. Id.; Pl.'s Mem. Opp'n. Defs.' Mot. Dismiss [Docket No. 11] 4.

Over the course of their relationship, Rockland and Defendants transacted for over $40 million worth of business. Wolford Decl. ¶ 8. CNC stopped payment on Rockland invoices in 2014. Kang Decl. ¶ 12. According to Rockland, these invoices total over $750,000. Am. Compl. ¶1. CNC does not dispute the outstanding invoices. CNC claims it stopped payment after learning Rockland was selling product directly to CNC's largest customer. Kang Decl. ¶ 12.

Rockland initiated this action in Goodhue County, Minnesota, after settlement discussions failed to resolve the parties' dispute. See Notice of Removal. CNC removed the action to federal court and this Motion followed.

### III. DISCUSSION

**A. Personal Jurisdiction**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(1). To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie

showing of personal jurisdiction over the defendant. Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd., 89 F.3d 519, 522 (8th Cir. 1996). For the purposes of a prima facie showing, the evidence is viewed in the light most favorable to the plaintiff and all factual conflicts are resolved in the plaintiff's favor. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).

Determining whether personal jurisdiction exists is a two-prong inquiry: first, the requirements of the Minnesota long-arm statute must be satisfied, and second, the exercise of personal jurisdiction must comport with due process. Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693 (8th Cir. 2003). Because Minnesota's long-arm statute is "coextensive with the limits of due process," the only question is whether the exercise of personal jurisdiction comports with due process. Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc., 63 F.3d 694, 697 (8th Cir. 1995).

A court properly exercises personal jurisdiction over a nonresident defendant when the defendant has sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted). Sufficient contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). A finding of reasonable anticipation requires that there be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

A court may use one of two different analyses to conclude whether the defendants' contacts with the forum state confer personal jurisdiction. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648 (8th Cir. 2003). General jurisdiction cases analyze whether a defendant's contacts with the state are so "continuous and systematic" that the defendant becomes subject to the jurisdiction of that state's courts for any purpose. Morris v. Barkbuster, Inc., 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.9 (1984)). Specific jurisdiction, the second method of analysis, is viable only if the injury giving rise to the action occurred within or had some connection to the forum state. Id. at 414; see also Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994) (identifying and discussing general and specific personal jurisdiction).

The Eighth Circuit applies a five factor test in analyzing the constitutional requirements needed for personal jurisdiction. See Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1435 (8th Cir. 1995); see also Rostad v. On-Deck, Inc., 372 N.W.2d 717, 719 (Minn. 1985). Three interrelated factors are considered to be of primary importance: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; and (3) the relation of the cause of action to these contacts. See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995). The third factor—the relationship of the cause of action to these contacts—distinguishes between specific and general jurisdiction. There are two secondary factors: (1) the interest of the forum state in providing a forum for its residents; and (2) the convenience of the parties. See id.

Rockland advances three arguments to support its contention that Defendants' contacts with Minnesota were sufficiently continuous and systematic to confer general personal

jurisdiction. First, Defendants conducted business with Rockland, a company with its principal place of business in Minnesota, for over 10 years. Second, regular correspondence occurred between Defendants and Rockland employees based in Minnesota. Finally, Kang visited Minnesota to discuss business with Rockland executives and toured Rockland's Red Wing facility. To rebut Rockland's arguments, Defendants contend that most of the product it purchases is manufactured and picked up at Rockland facilities outside of Minnesota. Payment for product is submitted to a bank in Chicago, and Defendants' principal contact at Rockland is Mr. Chris Wolford, a Tennessee based employee. Finally, Defendants argue that Kang's single visit to Minnesota is insufficient to confer personal jurisdiction.

Taken together, Rockland's substantial history with Defendants and Kang's business trip to Minnesota comports with due process and thus satisfies Minnesota's jurisdictional requirements. Defendants' relationship with Rockland has been extensive, amounting to over $40 million of business over the span of nearly a decade. Further, Kang's involvement with Rockland began even earlier, when she was working as a corporate secretary for Shine Pyung. Defendants have had regular correspondence with Rockland employees located in Minnesota.[2] Finally, it is also undisputed that Kang insisted Rockland and CNC's business relationship would be governed by an agreement that was similar to the agreement that governed the Rockland and

---

[2] The electronic and telephonic communication between Defendants and Rockland is used for the limited purpose of coloring the nature of the parties relationship. The phone calls and emails, in and of themselves, are not sufficient to confer jurisdiction, but are relevant in analyzing whether Defendants' contacts with Minnesota were sufficiently continuous and systematic to confer jurisdiction in this state.

Shine Pyung relationship, an agreement that called for the application of Minnesota law.[3] When CNC elected to conduct business with Rockland, it elected to conduct business with a company whose principal place of business is in Minnesota. That most of CNC's product may have been manufactured outside of Minnesota, and that CNC's primary contact with Rockland was with an employee in Tennessee, does not alter this conclusion.

Additionally, Kang's visit to Red Wing, Minnesota further supports the finding of Minnesota's jurisdiction over CNC. That Kang traveled to Minnesota, as opposed to Wisconsin or to another state that Rockland conducted business from, is telling and undermines CNC's contention that it had no reason to suspect Rockland was headquartered in Minnesota. Although the details of the trip are vague, Kang's trip to Red Wing undoubtedly furthered CNC's relationship with Rockland.

The cases cited by Defendants in support of their position are each controlled by a unique mixture of facts that do not neatly overlay with the facts presented here. For example, in Scullin Steel Co. v. Nat'l Ry. Utilization Corp., the parties' relationship consisted of a single sales agreement (that was later amended) that was conceived in 1978 and was the subject of the lawsuit only two years later. 676 F.2d 309 (8th Cir. 1982). Furthermore, the plaintiff in Scullin traveled to the state of the defendant; the defendant never traveled to Missouri, the state where the plaintiff filed suit. Id. at 310. Similar distinctions befall direct application of the other cases

---

[3] Defendants correctly note that Rockland's agreement with Shine Pyung has not been made part of this dispute. That, however, does not preclude the contents of that agreement from being used as evidentiary support that Kang possessed at least some knowledge that CNC was transacting with a company that has its principal place of business in Minnesota. Also significant is Kang's own statement that she was the party requesting that CNC and Rockland execute such an agreement. See Kang Decl. ¶ 11 ("I agreed, but I asked for assurances that Rockland [] would enter into an agreement similar to its agreement with Shine Pyung.").

cited by Defendants. Indeed, the Eighth Circuit has emphasized that challenges to personal jurisdiction involve "applying principles of fairness and reasonableness to a distinct set of facts, and the determination is not readily amenable to rigid rules that can be applied across the entire spectrum of cases." Anderson v. Dassault Aviation, 361 F.3d 449, 452 (8th Cir. 2004). Under the present facts, exercising personal jurisdiction over Defendants comports with notions of fair play and substantial justice.

   **B**. **Venue**

CNC argues that this suit should be dismissed based on improper venue. Civil actions may be brought in a judicial district in accordance with 28 U.S.C. § 1391(b). Relevant here is subpart 2, which states that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Id. § 1391(b)(2).[4] Suitable venue is not limited to the "best" forum to adjudicate the claim; the question is whether the district the plaintiff chose has a substantial connection to the claim. Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 563 (8th Cir. 2003). "One of the central purposes of statutory venue is to ensure that a defendant is not 'haled into a remote district having no real relationship to the dispute.'" Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995) (quoting Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994)).

In Woodke, the Eighth Circuit held that Congress' intent of the venue statute was for

---

[4] Rockland also argues that venue is appropriate in Minnesota pursuant to 28 U.S.C. § 1391(b)(1) since CNC, according to the residency provision of the venue statute—28 U.S.C. § 1391(c)(1)—of the venue statute, and Kang, as CNC's owner and agent, both reside in Minnesota. Because venue in Minnesota is proper under 28 U.S.C. § 1391(b)(2), this argument is not further considered here.

courts to focus on the relevant activities of the defendant, not of the plaintiff.  70 F.3d at 985.  Here, the relevant activities of Defendants dictate that Minnesota is a proper venue.  Defendants have been business partners with Rockland for nearly a decade.  This relationship has generated a significant history of transactions that were directed to a company headquartered in Minnesota.  Although Defendants' communications with Rockland and Rockland's manufacturing of Defendants' product was not exclusively conducted inside Minnesota's borders, some was.  For these reasons, and based on the above discussion of personal jurisdiction, venue in Minnesota is proper; Defendants are not being haled into a remote district that has no significant relationship to the dispute.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Container Navigation Corporation and Kyung Kang's Motion to Dismiss [Docket No. 3] is **DENIED**.

BY THE COURT:

      s/Ann D. Montgomery      
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 27, 2015.